Filed 1/7/26  P. v. Jay CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD JAY,<br><br>    Defendant and Appellant. | H052373<br>(Santa Clara County<br> Super. Ct. No. C2306925) |

Defendant Richard Jay pleaded no contest to various counts involving physical abuse against a woman with whom he had been in a dating relationship.  The trial court sentenced Jay to a total term of nine years four months after denying his request to dismiss a prior strike conviction.

Jay contends the trial court erred by denying his motion under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) to replace his appointed counsel.  We disagree and will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Between March and May 2023, police repeatedly responded to reports that Jay committed various acts of physical abuse against a woman.  The woman alleged Jay's

acts included striking her in the face, repeatedly choking and suffocating her, and threatening to kill her.

Jay pleaded no contest to all eight counts alleged in the information: two counts of making criminal threats (Pen. Code, § 422, subd. (a); counts 1, 6)[1]; four counts of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); counts 2, 3, 5, 7); false imprisonment (§ 236; count 4); and inflicting corporal injury on a spouse, cohabitant, former spouse, or former cohabitant (§ 273.5, subd. (a); count 8). Jay admitted four aggravating circumstances regarding these counts (§ 1170, subd. (b)), and he admitted he had sustained a prior strike conviction (§§ 667.5, subd. (c), 1192.7, subd. (c)). Jay's pleas were not entered pursuant to a plea agreement; he pleaded no contest and made his admissions without any agreement as to what sentence would be imposed.

Before accepting Jay's pleas, the trial court discussed plea negotiations that had taken place and Jay's reasons for entering his pleas. The trial court noted Jay entered his pleas with "no promises made and no indication at this point of what the likely sentence would be." The trial court recounted its understanding that the prosecution had offered a plea agreement containing a maximum sentence of either four or six years in prison that would allow Jay to file a *Romero*[2] motion for the court to dismiss his prior strike enhancement at sentencing. The trial court stated it believed this was "a good way to resolve this case," but Jay had communicated it was "important" to him "to get out of custody" and to "try and demonstrate to the Court that [he had] actually changed" and no longer posed a threat. Jay confirmed he wanted an opportunity to be released and to

---

[1] Unspecified statutory references are to the Penal Code.
[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

2

demonstrate through his behavior on release that his anticipated *Romero* motion should be granted.

The trial court stated it had "some reservations" about Jay's decision not to accept the proposed plea agreement because Jay's chances to have his *Romero* motion granted were "not very good at all." The court explained to Jay the risks involved in his decision, including that any violations of an existing no-contact order with the victim could damage whatever chances he had of a *Romero* motion being granted. Jay confirmed he wanted to plead no contest without the benefit of a plea agreement to give himself a chance to be released and to demonstrate through his conduct that his *Romero* motion should be granted. After engaging in a colloquy in which Jay stated he understood the information on the waiver and plea form, the trial court accepted Jay's pleas. The trial court issued a criminal protective order prohibiting Jay from contacting the victim, and released Jay under supervision on his own recognizance.

Days later, Jay was arrested for violating the protective order. The trial court revoked Jay's release under supervised own recognizance and issued a bench warrant. Soon thereafter, Jay was again arrested for violating the criminal protective order and for possessing drug paraphernalia.

At sentencing, Jay sought to have his appointed counsel replaced pursuant to *Marsden*, *supra*, 2 Cal.3d 118. In a closed hearing, Jay raised four issues: (1) he was surprised to learn he faced a potential sentence of more than six years; (2) he was not informed a defense to potential witness dissuasion charges existed; (3) he was "rushed and threatened" and "scared" into signing a plea agreement; and (4) his counsel did not sufficiently communicate with him. With regard to the second issue, Jay stated the prosecutor told him if he did not sign a plea agreement, she would dismiss the case and refile it, adding witness dissuasion counts resulting from calls Jay had made. Jay stated that when he entered his pleas he was not aware of a case that provided a potential

3

defense to such additional charges, and if he had been aware of this case, he would not have pleaded to the charges.

Jay's counsel confirmed at the hearing that the prosecutor intended to dismiss the case and refile charges, adding "multiple dissuading a witness charges" based on unspecified "multiple calls" Jay had made. Counsel stated the case to which Jay referred providing a defense to such additional charges was not decided by the California Supreme Court until months after Jay's pleas. Jay's counsel stated he did not discuss this potential defense to any witness dissuasion charges with Jay before Jay's decision to plead because no such charges had been filed. As to Jay's claim of a lack of communication, counsel testified he "went out of [his] way to discuss the case with" Jay and communicated with Jay on a "regular basis," stating: "I don't think there's a client that I've ever talked to more than Mr. Jay." Counsel stated he attempted to negotiate a plea agreement and the prosecution's offer was for a maximum sentence of six years, an offer counsel recommended that Jay accept. Instead, counsel testified, Jay decided to plead to the charges without any agreement as to the sentence in an effort to be released, a decision counsel stated he advised against.

The trial court recalled "the deal breaker" for the prosecutor in plea negotiations was Jay's desire to be released after the plea hearing, which led to Jay's decision to plead without an agreement as to the sentence. The court denied Jay's *Marsden* motion, stating it found no basis to conclude Jay's counsel did not properly represent him.

The sentencing court then denied Jay's *Romero* motion, noting the seriousness of Jay's offenses. The court sentenced Jay to a total term of nine years four months in prison. The court also issued another criminal protective order.

Jay timely appealed after obtaining a certificate of probable cause. (See § 1237.5.)

## II. DISCUSSION

Jay argues the trial court abused its discretion by denying his *Marsden* motion. He contends his counsel's failure to advise him about a defense to potential witness

4

dissuasion charges constituted ineffective assistance of counsel and thus the trial court should have granted his *Marsden* motion. The Attorney General responds that the trial court properly denied the motion and Jay did not receive ineffective assistance of counsel. We conclude the trial court did not abuse its discretion in denying Jay's *Marsden* motion.

### A. *Legal Principles and Standard of Review*

#### 1. Marsden *motion*

"A defendant 'may be entitled to an order substituting appointed counsel if he shows that, in its absence, his Sixth Amendment right to the assistance of counsel would be denied or substantially impaired.' [Citation.] The law governing a *Marsden* motion 'is well settled. "When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations]." [Citations.]' [Citation.]" (*People v. Memro* (1995) 11 Cal.4th 786, 857 (*Memro*).)

" '[W]hen inadequate representation is alleged, the critical factual inquiry ordinarily relates to matters outside the trial record: whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation rather than from unwise choice of trial tactics and strategy.' [Citation.]" (*Marsden*, *supra*, 2 Cal.3d at pp. 123-124.)

"[T]he decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney." (*Marsden*,

5

*supra*, 2 Cal.3d at p. 123.)  We review the denial of a *Marsden* motion for abuse of discretion.  (*Memro*, *supra*, 11 Cal.4th at p. 857.)

### 2. *Ineffective assistance of counsel*

"To establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Samayoa* (1997) 15 Cal.4th 795, 845.)  " 'When a defendant on appeal makes a claim that his counsel was ineffective, the appellate court must consider whether the record contains any explanation for the challenged aspects of representation provided by counsel.  "If the record sheds no light on why counsel acted or failed to act in the manner challenged, 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation,' [citation], the contention must be rejected." ' [Citations.]" (*Id.* at pp. 845-846.)

"Counsel's first duty is to investigate the facts of his client's case and to research the law applicable to those facts." (*People v. Ledesma* (1987) 43 Cal.3d 171, 222.) "Criminal defense counsel has the duty to investigate carefully all defenses of fact and of law that may be available to the defendant." (*In re Hill* (2011) 198 Cal.App.4th 1008, 1016-1017.)  "If counsel's 'failure [to undertake such careful inquiries and investigations] results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.' [Citation.]" (*In re Saunders* (1970) 2 Cal.3d 1033, 1042.)  "The adequacy of a counsel's investigation is 'assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.' [Citations.]" (*In re Brown* (2013) 218 Cal.App.4th 1216, 1223.)

**B.** *Analysis*

Jay has not shown his counsel's performance was deficient or he was prejudiced by his counsel's failure to inform him of a decision that Jay asserted provided a defense to possible additional witness dissuasion charges. Thus, the trial court did not abuse its discretion in denying Jay's *Marsden* motion.

According to Jay and Jay's counsel, the prosecutor stated if Jay did not accept a plea agreement she would withdraw the case and refile the matter with additional charges of witness dissuasion based on some unspecified calls Jay had made. However, the prosecutor did not actually file any such additional charges because Jay elected to plead to the charges without the benefit of a plea agreement.

Section 136.1, subdivision (b)(2) (hereafter section 136.1(b)(2)) makes it a crime to attempt to dissuade a victim or witness from "[c]ausing a complaint . . . to be sought and prosecuted, and assisting in the prosecution thereof." By the time Jay elected to plead guilty, this court in *People v. Reynoza* (2022) 75 Cal.App.5th 181 (*Reynoza I*) had concluded a person cannot be guilty under section 136.1(b)(2) for conduct occurring after a complaint was already filed because "[i]f the defendant knows a complaint has already been filed and does not attempt to prevent or dissuade the witness from causing any further or amended complaint to be filed, an essential element of the offense is missing." (*Reynoza I*, *supra*, at p. 185.) At the time of Jay's plea, the California Supreme Court had granted a petition for review of *Reynoza I* but stated the *Reynoza I* opinion could continue to be cited. (See *People v. Reynoza*, S273797, Supreme Ct. Mins., May 11, 2022.) It was not until months after Jay's plea that the Supreme Court issued its decision in *People v. Reynoza* (2024) 15 Cal.5th 982 (*Reynoza II*), agreeing with this court and disapproving an earlier decision by another Court of Appeal by concluding that "[w]here criminal charges have already been filed, postcharging dissuasion alone does not constitute an offense under section 136.1(b)(2)." (*Id.* at p. 1013.)

7

The prosecutor did not actually file any witness dissuasion charges against Jay. *Reynoza I* and the later-issued *Reynoza II* opinion held that postcharging dissuasive conduct could not form the basis for a conviction under one specific provision of section 136.1—subdivision (b)(2). Neither opinion held that postcharging dissuasive conduct may not be charged under section 136.1's numerous other witness dissuasion provisions. Both Jay and his counsel generally alluded to calls Jay made that could form the basis for witness dissuasion charges, but no evidence was introduced as to the nature or timing of these calls or what the nature of additional charges resulting from these calls would be. Presumably, the prosecutor was aware of the *Reynoza I* opinion when she made the statement about possible additional charges and the prosecutor would file any additional charges with the opinion in mind. Therefore, Jay has not demonstrated that *Reynoza I* or *Reynoza II* provided a defense to possible additional charges.

In addition, the trial court could reasonably conclude Jay was not credible in asserting he would not have pleaded to the charges if his counsel had informed him of the *Reynoza I* opinion. As the trial court concluded and as Jay himself stated at the plea hearing, Jay's foremost consideration in pleading no contest was not the threat of possible additional charges, but the desire to seek release to demonstrate he had been rehabilitated and thereby to increase his chances for a successful *Romero* motion. Other aspects of Jay's *Marsden* hearing statements were also contradicted. Jay asserted he felt "rushed and threatened" and "scared" into signing a plea agreement, but he did not actually sign a plea agreement but instead pleaded no contest without the benefit of a plea agreement. Jay made this decision against the advice of counsel. He also raised no claim at the plea hearing that he was coerced into pleading no contest, and he initialed portions of the waiver and plea form averring that his plea decision was knowing and voluntary. Jay asserted he did not know he could face a sentence greater than six years, but he initialed a provision of the waiver and plea form stating he understood he could face a maximum sentence of 14 years in prison. He contended his counsel failed to adequately

8

communicate with him, but his counsel testified that he communicated regularly with Jay and that he had not talked to any client more than he did with Jay.

"To the extent there was a credibility question between defendant and counsel at the hearing, the court was 'entitled to accept counsel's explanation.' [Citation.]" (*People v. Smith* (1993) 6 Cal.4th 684, 696.) Given these contradictions, the trial court could reasonably conclude the record did not "clearly show[]" Jay's appointed counsel provided ineffective assistance. (See *Memro*, *supra*, 11 Cal.4th at p. 857.) Jay did not show a failure to replace counsel would substantially impair his right to assistance of counsel, and thus the trial court did not abuse its discretion in denying Jay's *Marsden* motion. (See *ibid.*)

### III. DISPOSITION

The judgment is affirmed.

_____
Greenwood, P. J.

WE CONCUR:


_____
 Danner, J.


_____
 Bromberg, J.


H052373 People v. Jay